IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAIʻI FLORICULTURE AND NURSERY ASSOCIATION, ET AL., | ) ) ) | CIV. NO. 14-00267 BMK |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY |
| vs. | ) ) ) | JUDGMENT ON CLAIMS ONE AND TWO OF PLAINTIFFS' |
| COUNTY OF HAWAII, | ) ) | COMPLAINT |
| Defendant. | ) ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIMS ONE AND TWO OF PLAINTIFFS' COMPLAINT

Plaintiffs Hawaiʻi Floriculture and Nursery Association, Hawaiʻi Papaya Industry Association, Big Island Banana Growers Association, Hawaiʻi Cattlemen's Council, Inc., Pacific Floral Exchange, Inc., Biotechnology Industry Organization, Richard Ha, Jason Moniz, Gordon Inouye, and Eric Tanouye filed this action against Defendant County of Hawaii, seeking to invalidate Hawaii County Ordinance 13-121, codified as Hawaii County Code ("HCC") §§ 14-128 et seq. This Ordinance was enacted by the County and imposes restrictions on "the open air cultivation, propagation, development, or testing of genetically engineered crops or plants." HCC § 14-130.

Before the Court is Plaintiffs' Motion for Summary Judgment on

Claims One and Two of Plaintiffs' Complaint (Doc. 28).  Claim One of Plaintiffs'

Complaint asserts that Ordinance 13-121 is expressly and impliedly preempted by

federal law; Claim Two asserts the Ordinance is preempted by Hawaii state law.

As discussed below, the Court finds that Ordinance 13-121 is preempted by Hawaii

state law and is, in part, expressly preempted by the federal Plant Protection Act, 7

U.S.C. §§ 7701 et seq.  The Court therefore concludes that the Ordinance is

invalid.

## FACTUAL BACKGROUND

Ordinance 13-121, previously designated Bill 113 Draft 3, is now

codified as HCC §§ 14-128 et seq.  The stated purpose of the Ordinance is to

"protect Hawai'i Island's non-genetically modified agricultural crops and plants

from genetically modified organism cross pollination and to preserve Hawai'i

Island's unique and vulnerable ecosystem while promoting the cultural heritage of

indigenous agricultural practices."  HCC § 14-128.  The Ordinance provides that

"[n]o person shall knowingly engage in the open air cultivation, propagation,

development, or testing of genetically engineered crops or plants."  HCC § 14-130.

This prohibition "is intended to prevent the transfer and uncontrolled spread of

genetically engineered organisms on to private property, public lands, and

waterways."  HCC § 14-128.

The Ordinance exempts persons engaged in open air cultivation, propagation, or development of genetically engineered papaya, and crops or plants other than papaya "only in those specific locations where genetically engineered crops or plants have been customarily open air cultivated, propagated, or developed by that person prior to December 5, 2013." HCC § 14-131.   In order to be exempt from the Ordinance's prohibitions, under HCC § 14-133, all persons engaged in any form of cultivation, propagation, development, or indoor testing of genetically engineered crops or plants must be registered, and must pay an annual registration fee of $100 per location.[1]   HCC § 14-133(a).   All persons engaged in non-commercial cultivation or propagation of genetically engineered papaya are exempt from the Ordinance's registration requirements.   HCC § 14-133(b).   The Ordinance also allows for an "emergency exemption" from the provisions of the Ordinance for anyone engaged in the cultivation, propagation, or development of a "non-genetically engineered crop or plant that is being harmed by a plant pestilence[.]"   HCC § 14-132.

Ordinance 13-121 also contains a penalty provision, which states that "[a]ny person who violates any provision of this article shall be guilty of a violation, and upon conviction thereof, shall be sentenced to a fine of up to $1,000 for each

---

[1] For purposes of HCC § 14-133, "[a]ll contiguous land shall be treated as a single location." HCC § 14-133(a).

separate violation." HCC § 14-134. Furthermore, violators "shall be deemed to be guilty of a separate offense for each and every day a violation of this article is committed, continued, or permitted for each location." HCC § 14-134.

Ordinance 13-121 became effective on December 5, 2013. Ordinance 13-121 at 5.

On June 9, 2014, Plaintiffs filed this action against the County, seeking to invalidate Ordinance 13-121. The Complaint asserts four claims: (1) Claim 1 for preemption under federal law; (2) Claim 2 for preemption under state law; (3) Claim 3 for violation of the Interstate Commerce Clause of the United States Constitution; and (4) Claim 4 alleging a regulatory taking in violation of the Hawaii State Constitution. (Complaint ¶¶ 53-73.) Plaintiffs seek, among other things, a judgment declaring Ordinance 13-121 invalid and an injunction enjoining the County and its agents and employees from enforcing the Ordinance.

Plaintiffs now move for summary judgment on Claim 1 for preemption under federal law and Claim 2 for preemption under state law. The County and Amici Curiae[2] oppose this Motion. As discussed below, the Court finds that the Ordinance is fully preempted under state law and is partially preempted under federal law.

---

[2] Amici Curiae are Center for Food Safety, Nancy Redfeather, Marilyn Howe, and Rachel Laderman.

<span style="text-align:center">DISCUSSION</span>

I.      Standing

As a preliminary matter, the County challenges the standing of Plaintiffs.   The County contends that Plaintiffs lack standing to bring this action. (County Opp. at 47.)   As discussed below, the Court finds that the standing requirement is satisfied.

To satisfy Article III standing, a plaintiff must show (1) "it has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   Multistar Indus., Inc. v. U.S. Dep't of Transp., 707 F.3d 1045, 1054 (9th Cir. 2013) (internal quotation marks and brackets omitted).

Although the County challenges the standing of each Plaintiff, the Ninth Circuit has noted, "[a]s a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d 521, 523 (9th Cir. 2009) (addressing the merits after determining that one appellee had standing and declining to address whether the other appellees had standing);

Thorsted v. Gregoire, 841 F. Supp. 1068, 1073 (W.D. Wash. 1994) ("If one plaintiff has standing, it does not matter whether the others do."); see also Sierra Club v. El Paso Props., Inc., Civ. No. 01-02163 BNB-MEH, 2007 WL 45985, at *3 (D. Colo. Jan. 5, 2007) (declining to consider the standing of one plaintiff where there had been a previous finding that another had standing, reasoning that both were "represented by the same counsel, raise the same . . . claims, and have presented their arguments to the court jointly throughout these proceedings"). Consequently, in this action for injunctive relief, this Court may proceed to the preemption issues upon finding that at least one Plaintiff has standing to bring this action.

The County challenges the standing of Plaintiffs Pacific Floral Exchange, Inc., and Gordon Inouye, arguing they have not "suffered an injury," and at most, "the injury they describe is hypothetical and speculative." (County Opp. at 51.) Based on the declarations of Grayson Inouye[3] and Plaintiff Gordon Inouye,[4] open air field testing of genetically engineered anthurium is currently being conducted at their nurseries for screening against bacteria and nematodes.

---

[3] Grayson Inouye is the owner of Plaintiff Pacific Floral Exchange, Inc., which is a nursery located on Hawaii Island. (Grayson Inouye Decl'n ¶ 2.) Pacific Floral Exchange, Inc., is a member of the Hawaiʻi Floriculture and Nursery Association. (Id.)

[4] Gordon Inouye is the co-owner of Floral Resources/Hawaiʻi, which is a nursery located on Hawaii Island. His company is a member of the Hawaiʻi Floriculture and Nursery Association. (Gordon Inouye Decl'n ¶ 2.)

(Grayson Inouye Decl'n ¶ 7; Gordon Inouye Decl'n ¶ 5.)   The testing is being conducted pursuant to an open air field testing permit issued by the United States Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS").   (Eric Tanouye Decl'n, Ex. A.)

The APHIS permit names Dr. Lisa Keith as the permittee.   (Eric Tanouye Decl'n, Ex. A at 1.)   Dr. Keith is a scientist with the USDA Agricultural Research Service, who serves as the lead scientist in developing a genetically engineered variety of anthurium that is resistant to bacteria blight and nematodes. (Eric Tanouye Decl'n ¶ 6.)   The permit details procedures for the field testing and names Plaintiff Pacific Floral Exchange, Inc., and Floral Resources/Hawaii as "Release Sites."   (Eric Tanouye Decl'n, Ex. A at 13-14.)   Open air testing is currently being conducted pursuant to this permit at these Release Sites.   (Grayson Inouye Decl'n ¶ 7; Gordon Inouye Decl'n ¶ 5; see also Eric Tanouye Decl'n ¶ 8 (noting that open air field testing is ongoing at Pacific Floral Exchange, Inc., and Floral Resources/Hawaii.))

HCC § 14-130 prohibits all persons from "knowingly engag[ing] in the open air . . . testing of genetically engineered crops or plants."   Thus, the Ordinance prohibits Plaintiffs Pacific Floral Exchange, Inc., and Gordon Inouye from conducting these ongoing open air field tests at their nurseries and prevents

them from utilizing their property as they wish.

The Court concludes that Plaintiffs Pacific Floral Exchange, Inc., and Gordon Inouye have alleged sufficient facts to establish an actual and concrete injury in fact. They establish that they use their property for a particular use – i.e., field testing – and that they suffer injury when the continued use of their property for such purpose is threatened by the Ordinance. See Nat'l Wildlife Fed'n v. Burford, 835 F.2d 305, 312-13 (D.C. Cir. 1987) (finding standing where the plaintiff's members established that they used the land and that their continued use and enjoyment of the land were adversely affected by the defendant's actions). Contrary to the County's assertions, Plaintiffs Pacific Floral Exchange, Inc., and Gordon Inouye's injuries are not hypothetical or speculative. Accordingly, Plaintiffs having standing to bring this action.[5]

II.     Implied Preemption Under State Law

Plaintiffs argue that Hawaii state law preempts Ordinance 13-121. (Motion at 36-48.) They contend that the Hawaii State Constitution vests the state with exclusive authority over agriculture, and that the Hawaii Department of Agriculture ("HDOA") "has established a comprehensive framework for regulating

---

[5] Because courts "need not address standing of each plaintiff if it concludes that one plaintiff has standing," the Court need not and does not reach the question of standing for the organizational Plaintiffs. See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d 521, 523 (9th Cir. 2009).

plants that present the very risk of environmental impacts that Bill 113 purports to address." (Motion at 44.) These are the same arguments for state preemption that this Court faced in <u>Syngenta Seeds, Inc. v. County of Kauai</u>, Civ. No. 14-00014 BMK, 2014 WL 4216022 (D. Haw. Aug. 25, 2014).

In <u>Syngenta</u>, the County of Kauai enacted an ordinance, which (1) regulated pesticides by requiring pre- and post-application reporting and established pesticide buffer zones, and (2) required specific annual reporting of each genetically engineered organism grown. <u>Syngenta</u>, 2014 WL 4216022, at *7-8. Regarding the ordinance's regulation of pesticides, this Court held that the "statewide constitutional concern for agriculture set out in art. XI § 3 [of the Hawaii State Constitution] and the administrative structures established in the DOA and Department of Health to effectuate the regulation of pesticides[] evidence[] the legislature's intent that state law be both uniform and exclusive." <u>Id.</u> at *8.

With respect to the ordinance's reporting requirements of genetically engineered plants, the Court noted that the HDOA was designated by the state legislature as the "official certifying agency with regard to certifying seed genetic purity, identity, and quality," and was granted rulemaking authority concerning plant quarantine and the control of harmful plants. <u>Id.</u> at *8-9 (citing HRS §§ 147-121, 150A-6.1, 152-1, 152-2; HAR § 4-68-6). This Court acknowledged

the HDOA is also vested with rulemaking authority concerning the introduction of plants into the state and the manner in which agricultural research may be undertaken. Id. at *9 (citing HRS § 141-2). This Court held that "these statutory provisions, in the context of art. XI § 3, the comprehensive administrative system established under the DOA, and the complete absence of reference to counties or local government therein evidence the legislature's intent that the state scheme for the regulation of specific potentially harmful plants be both uniform and exclusive preempting the imposition of local regulations on this specific issue." Id. at *9.

Turning to the Ordinance now before this Court, the parties assert similar arguments for and against state preemption that were advanced in Syngenta. After considering all of the arguments presented, the Court concludes that its analysis in Syngenta applies with equal force to Ordinance 13-121. Applying the legal standards and the state constitutional framework, statutes, and agriculture regulations discussed in Syngenta, as further supplemented by those discussed below, the Court concludes that Hawaii state law impliedly preempts and invalidates Ordinance 13-121.

Whether an ordinance impermissibly enters an area of exclusive and statewide statutory treatment may be measured by the "comprehensive statutory scheme test." Richardson v. City & Cnty. of Honolulu, 868 P.2d 1193, 1208

(Haw. 1994). Under this test, the "critical determination to be made" is whether the statutory scheme at issue indicates a legislative intention, either express or implied, to be exclusive and uniform throughout the state." Id. at 1208-09.

The first step of this test is to examine whether the local ordinance in question covers the same subject matter embraced by state law or regulations. See State v. Ewing, 914 P.2d 549, 554 (Haw. Ct. App. 1996). Only upon a finding of overlapping subject matter would a court then proceed to analyze the uniformity and exclusivity of a statutory scheme. See Citizens Utils. Co. v. Cnty. of Kauai, 814 P.2d 398, 400 (Haw. 1991) ("[A] municipal ordinance, which covers the same subject matter embraced within a State statute is invalid if the statute discloses an express or implied intent that the same shall be exclusive, or uniform in application throughout the State.") (quoting In re Application of Anamizu, 481 P.2d 116 (Haw. 1971)).

Article XI Section 3 of the Hawaii State Constitution directs the state to "conserve and protect agricultural lands," and vests the state legislature with the authority to create standards and criteria to accomplish that mission. Haw. Const. art. XI, § 3. The legislature in turn tasked the HDOA with, among other things, developing and implementing agriculture policy concerning the introduction, propagation, inspection, destruction, and control of plants.

For example, the HDOA is given the authority to adopt rules concerning (1) the introduction and propagation of plants, HRS § 141-2(1), and (2) the inspection, destruction, or exclusion of seeds and/or plants that may be "injurious, harmful, or detrimental . . . to the agricultural or horticultural industries or the forests of the State, or . . . may be in itself injurious, harmful, or detrimental to the same[.]"  HRS § 141-2(2).

The HDOA is also authorized to adopt rules regarding "noxious weeds," which are plants that "may be likely to become injurious, harmful, or deleterious to the agricultural . . . industry of the State and to forest and recreational areas and conservation districts of the State[.]"  HRS § 152-1 (definition of "noxious weed"); HRS § 152-2.  Specifically, the HDOA may establish criteria for designating plants as noxious weeds, as well as for the "[c]ontrol or eradication of noxious weeds."  HRS § 152-2(1), (3).  The HDOA acted on that authority by issuing Noxious Weed Rules, which govern the designation, control, and eradication of noxious weeds.  See generally HAR tit. 4, subtit. 6, ch. 68 & § 4-68-1.  The rules regulate plants that "reproduce[] by seeds capable of being dispersed over wide areas," HAR § 4-68-4(1); are "capable of competing with cultivated crops for nutrients, water or sunlight," HAR § 4-68-5(1); and are "not known to occur in one or more islands of the State," HAR § 4-68-8(1).  The rules

also acknowledge that such plants cause "severe production losses or increased control costs to the agricultural . . . industr[y];" endanger native flora and fauna; and are "injurious, or otherwise harmful to humans or animals." HAR § 4-68-6(1), (2) & (4). Nonetheless, state law allows noxious weeds to be imported for research, by permit. HRS § 150A-6.1; see also HRS § 141-2(6) (authorizing the HDOA to adopt rules concerning the manner in which agricultural research may be undertaken).

Additionally, the HDOA is tasked with designating "restricted plants," which are "plants that may be detrimental or potentially harmful to agriculture, . . . the environment, or animal or public health." HRS § 150A-6.1. The Hawaii Board of Agriculture ("HBOA") maintains a list of restricted plants that require a permit for entry into the State. HRS § 150A-6.1.

The forgoing statutes and regulations are part of a comprehensive statewide framework that addresses the precise environmental impacts that Ordinance 13-121 intends to deter: the concern that genetically engineered crops may contaminate, injure, or harm non-genetically engineered crops through open air transfer, uncontrolled spread, and cross pollination. HCC § 14-128, Ordinance 13-121 § 1(1). Through the foregoing statutes and regulations, the HDOA and the HBOA are tasked with developing and implementing rules concerning the

introduction, propagation, inspection, destruction, and control of plants that may injure or harm agriculture, the environment, or public health. Ordinance 13-121's ban on open air cultivation, propagation, development, and testing of genetically engineered crops or plants is an attempt to regulate the same subject matter. See Richardson, 868 P.2d at 1209.

Together, the HDOA and the HBOA implement and enforce regulations that touch on the cornerstone and purpose of Ordinance 13-121. The HBOA receives input on statewide agricultural problems, as it is comprised of members who are residents of each county. HRS § 26-16(b)(2). The chair of the Board also sits on a state advisory committee, which includes members from the board of land and natural resources, the office of environmental quality control, the department of health, and five other members with expertise in "the variety of problems involved in the adequate protection of our natural resources." HRS §150A-10. Clearly, the state legislature intended this network of the HDOA, the HBOA, and the advisory committee to have extensive and broad responsibilities over agricultural problems spanning the various counties to form a coherent and comprehensive statewide agricultural policy. In light of the comprehensive statutes and the network designed to address statewide agriculture problems, the Court concludes that legislative intent for an exclusive, uniform, and

comprehensive state statutory scheme on the precise subject matter addressed by Ordinance 13-121 preempts the County's ban on genetically engineered organisms. Richardson, 868 P.2d at 1207, 1209. Accordingly, Ordinance 13-121 is invalid.

The County and Amici Curiae argue that state law does not concern the same subject matter as the Ordinance because state legislation does "not specifically regulate[] genetically modified crops." (County Opp. at 35-37; Amici Curiae Opp. at 4-7.) They further argue that the HDOA does not protect against the harm addressed by the Ordinance, which they say is to "prevent the contamination of non-genetically engineered crops and plants by genetically engineered crops." (County Opp. at 36.) However, as discussed above, state statutes and rules implemented by the HDOA regulate the introduction and control of plants that are injurious and harmful to agriculture, and the rules specifically concern plants that "reproduce[] by seeds capable of being dispersed over wide areas[.]" HAR § 4-68-4(1).

Amici Curiae also contend that the state statutes and regulations discussed above cannot form a comprehensive statutory scheme because the statutes were enacted at different times. (Amici Curiae Opp. at 7-9.) However, the question before this Court is whether the Ordinance "covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an

express or implied intent to be exclusive and uniform throughout the state[.]" Richardson, 868 P.2d at 1209.   As discussed above, the Court finds that a statewide scheme covers the same subject matter as the Ordinance.   Amici Curiae point to no legal authority requiring the Court to rely on statutes enacted at the same time, and nothing precludes states from enacting a comprehensive statutory scheme over a period of time.

The County and Amici Curiae also argue that the Ordinance should be upheld in light of the County's authority "to protect health, life, and property," HRS § 46-1.5(13); "to prevent or summarily remove public nuisances," HRS § 46-1.5(12); and its Constitutional authority to protect the public trust pursuant to Article XI § 1 of the Hawaii State Constitution.   (County Opp. at 39-42; Amici Curiae Opp. at 3-4.)   The Court does not dispute the County's authority regarding police powers, nuisances and public trust duties, but this authority does not permit the County to legislate "in an area already staked out by the legislature for exclusive and statewide statutory treatment."   Richardson, 868 P.2d at 1207.

III.    Express Preemption Under the Federal Plant Protection Act

In addition to arguing that Ordinance 13-121 is preempted by state law, Plaintiffs contend that the Ordinance's ban on open air field testing is expressly preempted by federal law.   As detailed below, the Court finds that the

express preemption clause in the Plant Protection Act ("PPA"), 7 U.S.C. §§ 7701 et seq., preempts the Ordinance's ban on open air field testing of genetically engineered crops and plants.   Specifically, the Court concludes that the ban is preempted to the extent it prohibits field testing of "regulated articles" under 7 C.F.R. Part 340 that are "plant pests" or "noxious weeds."

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law."   Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985) (internal quotation marks and citation omitted).   That said, the "[p]reemption analysis begins with the presumption that Congress does not intend to supplant state law."   Tillison v. Gregoire, 424 F.3d 1093, 1098 (9th Cir. 2005) (internal quotation marks and citation omitted).   "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes."   Hillsborough, 471 U.S. at 713.   "[F]or the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws."   Id.

"Congress has the constitutional power to preempt state law, and may do so either expressly – through clear statutory language – or implicitly."   Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159, 1164 (9th Cir.

2008) (citation omitted).   Where Congress does expressly supersede state legislation by statute, a court's task is to "identify the domain expressly pre-empted."   <u>Dan's City Used Cars, Inc. v. Pelkey</u>, 133 S. Ct. 1769, 1778 (2013). Where Congress enacts a provision expressly defining the preemptive reach of a statute, matters beyond the reach of the provision are impliedly not preempted. <u>See</u> <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 517 (1992).

"In considering the preemptive scope of a statute, congressional intent is the ultimate touchstone."   <u>Dilts v. Penske Logistics, LLC</u>, 769 F.3d 637, 642 (9th Cir. 2014) (internal quotation marks and citation omitted).   Congressional intent is primarily "discerned from the language of the pre-emption statute." <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 486 (1996).

Plaintiffs contend that the express preemption clause of the PPA preempts the Ordinance's ban on open air field testing of genetically engineered crops or plants.   (Motion at 18-24.)   The PPA authorizes the Secretary of Agriculture to prohibit or restrict the importation, entry, exportation, or movement in interstate commerce of any plant that can directly or indirectly injure or cause damage to crops, public health, or the environment.   7 U.S.C. § 7712(a); <u>see</u> 7 U.S.C. § 7702(10) (defining "noxious weed") & (16) (defining "Secretary").

Section 7756, titled "Preemption," provides:

> no . . . political subdivision of a State may regulate the
> movement in interstate commerce of any . . . plant,
> . . . plant pest, noxious weed, or plant product in order to
> . . . prevent the introduction or dissemination of a . . .
> plant pest, or noxious weed, if the Secretary has issued a
> regulation . . . to prevent the dissemination of the . . .
> plant pest, or noxious weed within the United States.

7 U.S.C. § 7756(b)(1).[6]

In determining whether this statute preempts the Ordinance, this Court

must parse the statutory language to "identify the domain expressly pre-empted[.]"

Medtronic, Inc., 518 U.S. at 484.

Turning to the first phrase of the statue, it states that "**no** . . . **political**

**subdivision of a State may regulate the movement in interstate commerce of**

**any** . . . **plant** . . . **in order to** . . . **prevent the introduction or dissemination of a**

---

[6] The full text of 7 U.S.C. § 7756(b)(1) provides:

> Except as provided in paragraph (2), no State or political
> subdivision of a State may regulate the movement in interstate
> commerce of any article, means of conveyance, plant, biological
> control organism, plant pest, noxious weed, or plant product in
> order to control a plant pest or noxious weed, eradicate a plant pest
> or noxious weed, or prevent the introduction or dissemination of a
> biological control organism, plant pest, or noxious weed, if the
> Secretary has issued a regulation or order to prevent the
> dissemination of the biological control organism, plant pest, or
> noxious weed within the United States.

Paragraph (2) further provides exceptions for regulations that are consistent with
and do not exceed federal regulations, or where "special need" is demonstrated to
the Secretary, and the Secretary finds that there is a special need for additional
prohibitions or restrictions.  See 7 U.S.C. § 7756(b)(2).

. . . **plant pest, or noxious weed** . . . ."   The County is a "political subdivision of a State."   The PPA defines "movement" as, among other things, "release into the environment."   7 U.S.C. § 7702(9)(E); <u>see</u> <u>Syngenta</u>, 2014 WL 4216022, at *13. The PPA also defines "interstate commerce" as interstate "trade, traffic, or other commerce," 7 U.S.C. § 7702(7), and Congress has made an express finding in the PPA that "all plant pests, noxious weeds, plants, . . . regulated under [the PPA] are in or affect interstate commerce."   7 U.S.C. § 7701(9).   Ordinance 13-121 is intended to "prevent the introduction or dissemination of a . . . plant pest, or noxious weed" inasmuch as its express purpose is to "prevent the transfer and uncontrolled spread of genetically engineered organisms" that threaten to cross pollinate with and contaminate non-genetically engineered plants.   <u>Compare</u> 7 U.S.C. § 7756(b)(1) <u>with</u> HCC § 14-128.   The County clearly intended to prevent any injury or harm caused by the introduction or dissemination of genetically engineered "noxious weeds," which are defined as plants that "can directly or indirectly injure or cause damage to," amongst other things, agriculture, public health, or the environment.   7 U.S.C. § 7702(10).   Thus, the County's Ordinance is intended to prevent the dissemination of noxious weeds.   <u>See</u> HCC § 14-128.

      The preemption clause continues by stating that the foregoing prohibition is in effect ". . . **if the Secretary has issued a regulation** . . . **to**

**prevent the dissemination of the** . . . **plant pest, or noxious weed within the United States**."   The Secretary of Agriculture issued the regulations in 7 C.F.R. Part 340, which restrict the "introduction of regulated articles."   See 7 C.F.R. § 340.0 (2014) (titled "Restrictions on the introduction of regulated articles"). "Regulated articles" are defined as "[a]ny organism which has been altered or produced through genetic engineering, if the donor organism, recipient organism, or vector or vector agent belongs to any genera or taxa designated in § 340.2 and meets the definition of plant pest[.]"   7 C.F.R. § 340.1 (2014).   Regulated articles may include certain plant pests and noxious weeds, although not all plant pests and noxious weeds are regulated articles.   See 7 U.S.C. § 7702(10) (defining "noxious weed"); 7 C.F.R. § 340.1 (defining "plant pest" and "regulated articles").   Indeed, the parties agree that regulated articles are termed "presumptive plant pests." (Motion at 19; County Opp. at 16; Amici Curiae Opp. at 30; Reply at 24.)   Further, Part 340 regulates the release into the environment of any regulated article unless certain procedures are followed.   7 C.F.R. § 340.0; see 7 C.F.R. 340.1 (defining "introduction" as "release into the environment").   Consequently, to the extent that a regulated article under Part 340 is a plant pest or noxious weed, the Secretary has issued a regulation preventing the dissemination of that plant pest or noxious weed.[7]

---

[7] As stated above, not every regulated article is a plant pest or noxious weed, but to the extent a regulated article is a plant pest or noxious weed, 7 C.F.R Part 340 regulates that plant pest or

Based on the foregoing, the plain language of 7 U.S.C. 7756(b)(1) prohibits the County from regulating the release of plants in order to prevent the dissemination of a plant that may injure or cause damage to other plants, public health, or the environment (i.e., a "noxious weed") *if* the Secretary of Agriculture issued a regulation to prevent the dissemination of a noxious weed.   As discussed above, one of the purposes of Ordinance 13-121 is to prevent the dissemination, transfer, and spread of genetically engineered plants that may cause injury or harm to non-genetically engineered plants.   Ordinance 13-121 § 1; HCC § 14-128. Inasmuch as the Secretary of Agriculture has issued a regulation preventing the dissemination of regulated articles, which include certain noxious weeds and plant pests, see 7 C.F.R. Part 340, the Ordinance is expressly preempted by the plain language of 7 U.S.C. § 7756(b)(1) to the extent it bans field testing of genetically engineered plants that are "plant pests" or "noxious weeds" and are regulated under Part 340.   Conversely, the Ordinance's ban on field testing of plants that are not plant pests or noxious weeds regulated under Part 340 is not preempted by the PPA. See Cipollone, 505 U.S. at 517 ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.").

_____

noxious weed, thereby preventing its dissemination within the United States.

IV.    Implied Preemption Under Federal Law

Plaintiffs contend that Ordinance 13-121 is also impliedly preempted by federal law.   They argue that the Ordinance stands as an obstacle to field testing governed by 7 C.F.R. Part 340 and the general cultivation of genetically engineered organisms ensured by the "Coordinated Framework" founded on the PPA, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq., and the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 et seq.   (Motion 25-35.)

Congress' intent to preempt state law in a particular area may be inferred in two instances.   First, under the doctrine of field preemption, a state law will be preempted where federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it," Cipollone, 505 U.S. at 516 (internal quotation marks and citations omitted), or where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."   Hawaiian Navigable Waters Pres. Soc'y v. State of Hawaii, 823 F. Supp. 766, 771 (D. Haw. 1993) (internal quotation marks and citation omitted; format altered).   Second, under the doctrine of conflict preemption, "state law is nullified to the extent that it actually conflicts with federal law" such that "compliance with both federal and

state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"  Hillsborough, 471 U.S. at 713 (internal quotation marks and citations omitted).

Congress' intent to preempt state law, even when implied, must be clear.  See Barber v. State of Hawaii, 42 F.3d 1185, 1193 (9th Cir. 1994) ("Congress has not manifested a clear intent to preempt the field.").  Plaintiffs, however, have not shown a clear intent by Congress that the regulations in Part 340 or the Coordinated Framework so thoroughly occupy the field or establish a federal interest so dominant that field preemption applies.  Cipollone, 505 U.S. at 516; Hawaiian Navigable Waters Pres. Soc'y, 823 F. Supp. at 771.  Further, Plaintiffs have failed to establish that compliance with Part 340 and Ordinance 13-121 is a physical impossibility or that the Ordinance stands as an obstacle to Congress' purpose and objectives.  Hillsborough, 471 U.S. at 713.  In light of the presumption against federal preemption of state law, the Court rejects Plaintiffs' claim that federal law impliedly preempts Ordinance 13-121.

V.     Certification to the Hawaii Supreme Court

The County and Amici Curiae urge this Court to certify the question of state law preemption to the Hawaii Supreme Court, arguing that the issue is

dispositive of this case, has broad implications, and because there is no clear controlling precedent on this issue.   (County Opp. at 43-47; Amici Curiae Opp. at 14-17.)

Whether a question should be certified to a state supreme court is a matter of judicial discretion.   See Riordan v. State Farm Mut. Auto. Ins. Co., 589 F.3d 999, 1009 (9th Cir. 2009).   This Court may certify a question to the Hawaii Supreme Court when:   "(a) there is a question concerning Hawaii law; (b) the question is determinative of the cause; and (c) there is no clear controlling precedent in Hawaii judicial decisions."   Ill. Nat'l Ins. Co. v. Nordic PLC Constr., Inc., Civ. No. 11-00515 SOM-KSC, 2013 WL 160263, at *2 (D. Haw. Jan. 14, 2013) (citing Hawaii Rules of Appellate Procedure Rule 13(a)); see also HRS § 602-5(2).   However, certification is inappropriate when the law is "reasonably clear such that the court can readily predict how the Hawaii Supreme Court would decide the issue."   Id. (quoting Saiki v. LaSalle Bank Nat'l Ass'n, Civ. No. 10-00085 JMS-LEK, 2011 WL 601139, at *6 (D. Haw. Feb. 10, 2011)); Pai 'Ohana v. United States, 875 F. Supp. 680, 700 (D. Haw. 1995) ("where there is sufficient state law to enable this court to make an informed decision on the issues certification is inappropriate" (internal quotation marks and brackets omitted)).

Although the precise issue of whether Hawaii state law preempts a

county ban on genetically engineered plants has not been decided by the Hawaii Supreme Court, Hawaii appellate opinions have articulated very clear and specific state preemption standards.   In the analysis above, this Court relies on those standards and applies them to Ordinance 13-121 to predict how the Hawaii Supreme Court would decide the issue before this Court.   Because the relevant Hawaii law and standards on state preemption are "reasonably clear such that the court can readily predict how the Hawaii Supreme Court would decide the issue," the Court declines to certify the state law preemption issue to the Hawaii Supreme Court.   See Ill. Nat'l Ins. Co., 2013 WL 160263, at *2.

VI.    The County's Request for a Continuance

In its Opposition and at oral argument, the County, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56(d), asks the Court to defer consideration of the Motion pending further discovery.   The County seeks a Rule 56(d) continuance in order to conduct discovery on two issues:   (1) whether the organizational Plaintiffs have standing, and (2) with respect to federal implied preemption, "whether it would be impossible to comply with both the federal regulations and Ordinance 13-121."   (County Opp. at 59; Garson Decl'n at 4, ¶ 14.)

A party seeking a Rule 56(d) continuance must show "by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" FRCP 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). A district court may deny further discovery "if the movant has failed diligently to pursue discovery in the past." Id.; Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56([d]) motion").

The County's request for a continuance is denied. Additional discovery on the issues raised by the County would not prevent summary judgment. As discussed more fully above, the Court finds that non-organizational Plaintiffs Pacific Floral Exchange, Inc., and Gordon Inouye have standing, and the Court agrees with the County that federal law does not impliedly preempt Ordinance 13-121. Moreover, the County has had ample time to conduct discovery on the issues it has raised and to prepare its response to Plaintiffs' Motion.

## CONCLUSION

In light of the foregoing, the Court grants partial summary judgment on Claim 1 for express preemption under federal law, but only to the extent that express federal preemption applies to the Ordinance's ban on field testing of

genetically engineered plants that are "plant pests" or "noxious weeds" and are regulated under 7 C.F.R. Part 340. The Court declines to find that the Ordinance is impliedly preempted by federal law. On Claim 2, the Court grants summary judgment in favor of Plaintiffs, concluding that the Ordinance is preempted by Hawaii state law.

Accordingly, the Court enjoins the County from further implementing or enforcing Ordinance 13-121, codified as Hawaii County Code §§ 14-128 et seq. This Order is dispositive of this case. Judgment shall be entered in favor of Plaintiffs and against Defendant County of Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 26, 2014.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Hawai'i Floriculture & Nursery Ass'n, et al. v. Cnty. of Hawaii, CIV. NO. 14-00267 BMK; ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIMS ONE AND TWO OF PLAINTIFFS' COMPLAINT.

28